UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEWAYNE PHILLIPS,

         Petitioner,

v.                                  CASE NO. 04-CV-70207-DT
                                  HONORABLE PAUL D. BORMAN

PAUL RENICO,

         Respondent.
_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND (2) DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS

Petitioner DeWayne Phillips, a state prisoner presently confined at the St. Louis Correctional Facility in St. Louis, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of first-degree murder and felony firearm following a jury trial in the Calhoun County Circuit Court in 1999. He was sentenced to life imprisonment on the murder conviction and a consecutive term of two years imprisonment on the firearm conviction in 2000.

In his pleadings, Petitioner raises claims concerning the effectiveness of trial counsel, the late endorsement of a witness, the non-production of three witnesses, and the sufficiency of the evidence. For the reasons stated below, the Court denies the petition for a writ of habeas corpus. The Court also denies a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

1

**I.     Facts**

Petitioner's convictions stem from the shooting death of Antoine Harmon in Battle Creek, Michigan on May 15, 1999. At trial, Kerry Harmon, the victim's sister testified, that she drove with her brother and her cousin, Raymond Briggs, to Felicia Wilkins' house on Battle Creek Avenue that evening. When they arrived, Petitioner came outside and told them that Wilkins was not home. They left, but returned a second time. Her brother got into an argument with Wilkins who was standing on the porch. Petitioner came outside and told them to take the argument next door. When her brother and Wilkins continued to argue, Petitioner shot a gun toward the ground and then shot her brother in the head. Kerry Harmon saw several people running and then saw an ambulance arrive at the scene.

Raymond Briggs offered similar testimony at trial, as did witnesses Rochelle James and Bryan James.

Felicia Wilkins testified that Antoine Harmon was the father of her child and that she argued with him on her porch on May 15, 1999. While they were arguing, Petitioner came out to the porch and she heard someone yell, "take it next door." She then heard gunshots and felt something strike her hand. After the shooting, she went to the hospital and had bullet fragments removed from her hand. Wilkins identified Petitioner in a photographic lineup a few days later.

Kenneth Lott testified that he was with Petitioner and several others in an apartment on Battle Creek Avenue when he heard Antoine Harmon and Felicia Wilkins arguing on the porch. He then heard Petitioner go out to the porch, heard someone say, "Take that next door," and then heard two gunshots. Lott ran out the back door where Raymond Briggs approached him and told him to call an ambulance.

Sharod Reed, aka Sharod Sedore, also testified at trial. Several days prior to trial, the

prosecution notified Petitioner that it wanted to add Sharod Reed and other witnesses to its witness list. On the first day of trial, the prosecution moved to add the new witnesses as alibi rebuttal witnesses. Defense counsel objected, citing unfair surprise and noting that the witnesses were likely *res gestae* witnesses. The trial court allowed the prosecution to add the witnesses to its case-in-chief, but granted the defense an opportunity to interview the witnesses and seek adjournment or recess as necessary. Sharod Reed subsequently testified that he and his brother, Michael Sedore, went to see a man named Lamont Joyner on May 15, 1999. While there, he spoke to Petitioner who told him that he believed that police had issued warrants against him because he thought he had shot someone.

      Lamont Joyner testified that he was in his garage with Anthony Willie on May 15, 1999. He denied that Petitioner, Sharod Reed, or Michael Sedore were at his garage that day.

      Several police officers also testified regarding their investigation of the shooting. Sergeant Scott Metzgar testified that he responded to the shooting and found the victim lying on the porch. He spoke to several individuals and obtained a description of the perpetrator as a black male, dressed in black, who goes by the street name of "Juju." Detective David Adams testified that he spoke with Felicia Wilkins, Rochelle James, Brian James, and Kenneth Lott in determining that Petitioner was a suspect in the shooting. All four of those witnesses identified Petitioner as the shooter in photographic arrays a few days after the shooting. Detective Ernest Bucks testified that he participated in the arrest of Petitioner on May 20, 1999. He and other officers searched the home of Petitioner's grandmother and found Petitioner hiding in the attic.

      During the state's case, the prosecution indicated that it could not produce three endorsed witnesses, Denise Powell, Linda Simms, and Charles Brim. The trial court conducted in inquiry into the prosecution's efforts to produce those witnesses. A police officer testified that he

attempted to locate Powell and Simms through last known addresses, driver license information, postal addresses, criminal databases, and telephone directories, but his attempts were unsuccessful. As to Charles Brim, the prosecution stated that Brim had been served with a subpoena but failed to appear for court. The trial court found that the prosecution had exhibited due diligence in attempting to produce the witnesses and excused the prosecution from being required to produce them.

Petitioner presented an alibi defense at trial. Petitioner's grandmother testified that Petitioner was at her home in Detroit, Michigan from 10:00 a.m. until she left at 1:00 p.m. on May 15, 1999. He was also at her home the following morning around 9:00 or 10:00 a.m. Petitioner's sister confirmed that she lives with her grandmother in Detroit, Michigan. She testified that Petitioner was with his daughter in the basement of the residence at about 11:00 a.m. on May 15, 1999 and that she saw him there again at 5:30 or 6:00 p.m. that evening.

Petitioner also testified in his own defense. He said that he lived with his grandmother and sister in Detroit, Michigan at the time of the incident. He denied being in Battle Creek on May 15, 1999, denied going by the name of "Juju," denied having a gun, and denied committing the shooting.

At the close of trial, the jury found Petitioner guilty of first-degree murder and felony firearm.

Prior to sentencing, Petitioner filed a motion for new trial with the trial court, alleging that defense counsel had operated under a conflict of interest. At a hearing on the matter, defense counsel stated that he learned, after trial, that another lawyer at his firm had represented witness Sharod Reed, who had been previously identified as Sharod Sedore on the prosecution witness list, in an unrelated matter during the pendency of Petitioner's criminal proceedings.

4

The trial court denied the motion for new trial finding that Petitioner had not shown an actual conflict of interest which affected defense counsel's performance because counsel was unaware of his co-worker's representation of Sharod Reed at the time of trial. The court also noted that Petitioner was not prejudiced and/or that any error was harmless because several other witnesses identified Petitioner as the shooter and Reed's testimony was cumulative at best.

The trial court subsequently sentenced Petitioner to life imprisonment and a consecutive term of two years imprisonment on his convictions.

## II.     Procedural History

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals, raising several claims of error including those raised in the present petition. The Michigan Court of Appeals affirmed Petitioner's convictions and sentence in a per curiam decision. *People v. Phillips* No. 225047, 2002 WL 1308786 (Mich. Ct. App. June 14, 2002) (unpublished). Petitioner filed a delayed application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Phillips*, 467 Mich. 951, 656 N.W.2d 530 (2003).

Petitioner dated the present petition for writ of habeas corpus on December 11, 2003 and it was filed by the Court on February 6, 2004. Petitioner raises the following claims:

> I.    He was denied his rights to due process and the effective assistance of counsel where he was unaware of counsel's or his partner's conflict of interest and denied the opportunity to consider or waive the conflict.
>
> II.   He was denied due process and a fair trial where the trial court allowed the late endorsement of Sherod Reed, aka Sherod Sedore, who was originally listed only as an alibi rebuttal witness.
>
> III.  The trial court violated his due process and confrontation rights by improperly ruling that endorsed witnesses, Denise Powell, Charles Brim, and Linda Simms, were unavailable for trial and that the prosecution had exercised due diligence in attempting to produce them.
>
> IV.   His first-degree murder conviction was based upon insufficient evidence

5

of premeditation and deliberation.

Respondent filed an answer to the petition on August 9, 2004, asserting that the claims should be denied for lack of merit.

### III.   Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that

principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

7

**IV.     Analysis**

    A.     Ineffective Assistance of Counsel/Conflict of Interest Claim

Petitioner first claims that he is entitled to habeas relief because he was denied the effective assistance of counsel. Specifically, Petitioner asserts that trial counsel had a conflict of interest because another lawyer at his firm had represented witness Sharod Reed, aka Sharod Sedore, in unrelated matter.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions might be considered sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to

undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

The Supreme Court has recognized that in certain Sixth Amendment contexts, prejudice is presumed. *Strickland*, 466 U.S. at 692. Such circumstances included the "actual or constructive denial of the assistance of counsel" and "various kinds of state interference with counsel's assistance." *Id.* The Supreme Court has further stated that there is one type of ineffective assistance of counsel claim that warrants a "similar, though more limited, presumption of prejudice," namely, a case involving an actual conflict of interest that adversely affects counsel's performance. *Id.* (citing *Cuyler v. Sullivan,* 446 U.S. 335, 348-49 (1980), in which the Supreme Court held that to establish a Sixth Amendment violation resulting from the joint representation of multiple defendants by a single attorney, a defendant must demonstrate an actual conflict of interest which adversely affected the attorney's performance).

The Supreme Court, however, has not extended the *Sullivan* standard to cases beyond those involving an attorney's joint representation of multiple defendants. In *Mickens v Taylor*, 535 U.S. 162, 176 (2002), the Supreme Court observed that "not all attorney conflicts present comparable difficulties" and left open the question of whether *Sullivan* should be extended to cases other than those involving multiple joint representation. The United States Court of Appeals for the Sixth Circuit has ruled that the *Sullivan* standard should not be so extended. *See Smith v. Hofbauer*, 312 F.3d 809, 817-18 (6th Cir. 2002); *see also Whiting v. Burt*, 395 F.3d 602, 618 (6th Cir. 2005) (*Strickland* standard rather than *Sullivan* standard applies to conflict of

9

interest claim where trial counsel also served as appellate counsel); *Lordi v. Ishee*, 384 F.3d 189, 193 (6th Cir. 2004) (*Sullivan* standard is inapplicable to cases involving an attorney's unrelated representation of a co-defendant or a trial witness).

In this case, the Michigan Court of Appeals determined that Petitioner was not entitled to relief on his conflict of interest claim because that he had not established that defense counsel operated under an actual conflict of interest which adversely affected his performance. The court reasoned that Petitioner could not establish any adverse affect or prejudice because, at the time of trial, defense counsel was unaware that another attorney in his firm was representing witness Sharod Reed on an unrelated matter. *See Phillips*, 2002 WL 1308786 at *1.

Having considered the matter, this Court concludes that the Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of the law or the facts. Petitioner has not established that he is entitled to habeas relief under either the *Sullivan* or *Strickland* standards.

First, Petitioner has not shown that defense counsel operated under an actual conflict of interest which adversely affected his performance as required by *Sullivan*. To make such a showing, a petitioner must point to specific instances in the record which establish inconsistent interests and demonstrate that counsel made a choice between possible alternative courses of action. *See Moss v. United States*, 323 F.3d 445, 463 (6th Cir. 2003). If the conflict is to a matter that is irrelevant or is merely hypothetical, there is no constitutional violation. *Id*. at 464 (citing *Sullivan*, 446 U.S. at 350). A petitioner must establish a causal connection between the alleged conflict and the attorney's performance, *i.e.* that counsel was influenced in his basic strategic decisions by the other party's interests. *Id*. at 466 (citing *Wheat v. United States*, 486 U.S. 153, 160 (1988). Petitioner has made no such showing. Even assuming that Petitioner can

10

demonstrate an actual conflict, he has not demonstrated a causal connection between the alleged conflict and defense counsel's performance. To be sure, the record indicates that defense counsel was unaware that another attorney at his firm was representing witness Reed on an unrelated matter during Petitioner's trial proceedings and only learned of this fact after trial. Given these circumstances, Petitioner cannot demonstrate that defense counsel operated under a conflict of interest which adversely affected his performance.

Second, Petitioner has not established that counsel was ineffective under the standard set forth in *Strickland*. As an initial matter, the Court questions whether counsel can be deemed ineffective for failing to reveal a conflict about which he was unaware. The record indicates that defense counsel did conduct a conflict check at his firm, albeit using the apparently erroneous name of Sharod Sedore supplied by the prosecution. Even assuming that Petitioner can show that counsel was deficient as to the alleged conflict, however, Petitioner cannot demonstrate that he was prejudiced. Defense counsel cross-examined Sharod Reed and called a witness to contradict his testimony. While Reed's testimony was detrimental to the defense, the prosecution presented overwhelming evidence of Petitioner's guilt through the eyewitness testimony of Kerry Harmon, Raymond Briggs, Felicia Wilkins, Rochelle James, and Bryan James, all of whom identified Petitioner as the shooter. Petitioner has thus failed to show that defense counsel was deficient and/or that he was prejudiced by counsel's conduct. Accordingly, the Court concludes that Petitioner has not established that he was denied the effective assistance of trial counsel. Habeas relief is not warranted on this claim.

  B. <u>Late Endorsement Claim</u>

Petitioner next claims that he is entitled to habeas relief due to the prosecution's late endorsement of witness Sharod Reed. A few days before trial, the prosecution notified

Petitioner that it wanted to add Sharod Reed (and others) to its witness list as an alibi rebuttal witness. On the first day of trial, the trial court granted the prosecution's motion to add Sharod Reed but determined that he should be presented as part of the prosecution's case-in-chief. The court provided the defense with an opportunity to interview Reed and to seek an adjournment or recess as necessary.

It is well-settled that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (denying due process claim of a defendant who was convicted with aid of surprise testimony from an accomplice who was an undercover agent); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988) (citing *Weatherford*). A decision regarding the endorsement of a witness generally constitutes a state law matter within the trial court's discretion. *See Hence v. Smith*, 37 F. Supp. 2d 970, 982 (E.D. Mich. 1999) (citing cases); *Whalen v. Johnson*, 438 F. Supp. 1198 (E.D. Mich.1977) (it is not a fundamental error to permit a prosecutor to endorse a witness during trial even though the prosecutor had previously filed an affidavit stating that the witness was not material). This Court may only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). The trial court's endorsement of Sharod Reed did not deprive Petitioner of a federal constitutional right.

In this case, the Michigan Court of Appeals determined that the endorsement of Sharod Reed was appropriate as a matter of state law. *See Phillips*, 2002 WL 1308786 at *4. This

Court will not disturb the state court's determination that the endorsement of Reed was proper under Michigan law. Petitioner has not shown that the state court's decision is contrary to or an unreasonable application of United States Supreme Court precedent. He has not demonstrated that his trial was rendered fundamentally unfair by the endorsement of Reed given that defense counsel had the opportunity to interview Reed prior to his testimony and to request an adjournment or recess as necessary. Petitioner was not deprived of exculpatory evidence nor denied the ability to prepare an adequate defense. Habeas relief is not warranted on this claim.

    C.    <u>Due Diligence Claim</u>

Petitioner also asserts that he is entitled to habeas relief because the prosecution failed to produce three *res gestae* witnesses and failed to establish due diligence in the efforts to obtain their appearances at trial.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1973). The prosecution in a criminal trial must make a good faith effort to produce relevant witnesses. *See, e.g., Barber v. Page*, 390 U.S. 719, 724-25 (1968). The standard for evaluating whether the prosecution has made a good faith effort to produce a witness is one of reasonableness. *Ohio v. Roberts*, 448 U.S. 56, 74 (1990). The failure to produce a relevant witness only serves as a basis for habeas corpus relief if, under federal constitutional law, the petitioner is denied a fundamentally fair trial. *See Moreno v. Withrow*, 61 F.3d 904, 1995 WL 428407, *1-2 (6th Cir. 1995) (failure to call *res gestae* witness did not render trial fundamentally unfair and did not constitute prosecutorial misconduct).

In this case, the Michigan Court of Appeals found Petitioner's claim to be without merit

because the prosecution and police made "diligent, good-faith efforts" to locate Denise Powell and Linda Simms and the prosecution served a subpoena on Charles Brim, who "chose to ignore the subpoena" and "purposefully eluded testifying by not responding to the subpoena." *Phillips*, 2002 WL 1308786 at *3-4.

This Court agrees and finds that the Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The record demonstrates that the police made several attempts to locate Denise Powell and Linda Simms at their last known addresses, checked police records, and contacted other community resources, and that the prosecution actually served a subpoena on Charles Brim, who failed to appear. Given such evidence, the Court concludes that the prosecution made reasonable efforts to produce the witnesses and Petitioner's due process rights were not infringed by their non-production at trial.

Further, even if the failure to produce the witnesses violated Petitioner's constitutional rights, Petitioner is not entitled to relief from this Court. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon jury's verdict). Harmless error analysis applies to Confrontation Clause errors. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). Given the other evidence presented at trial, particularly the testimony of Kerry Harmon, Raymond Briggs, Felicia Wilkins, Rochelle James, and Bryan James identifying Petitioner as the shooter, there was ample evidence for the jury to find Petitioner guilty of first-degree

14

murder and felony firearm beyond a reasonable doubt.  Petitioner has not shown that the testimony of the unavailable witnesses was crucial or particularly beneficial to his defense such that its omission had a substantial or injurious influence or effect on the jury's verdict.  Petitioner is thus not entitled to habeas relief on this claim.

    D.    Insufficient Evidence Claim

Lastly, Petitioner claims that he is entitled to habeas relief because the prosecution presented insufficient evidence of premeditation and deliberation to support his first-degree murder conviction.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Because a claim of insufficiency of the evidence presents a mixed question of law and fact, *Huynh v. King*, 95 F.3d 1052, 1059 (11th Cir. 1996); *Maes v. Thomas,* 46 F.3d 979, 988 (10th Cir. 1995), this Court must determine whether the state court's application of the *Jackson* standard was reasonable.

Under Michigan law, first-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992).  Premeditation and deliberation require sufficient time to allow the defendant to take a second look.  *Id.*  The time interval may be minimal –  merely seconds – depending upon the circumstances of the killing. *People v. Berthiaume*, 59 Mich. App. 451, 456, 229 N.W.2d 497 (1975).  Premeditation and deliberation may be established by evidence of "(1) the prior relationship of the parties; (2) the

defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Schollaert*, 194 Mich. App. at 170. Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of the crime, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including a defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997). Use of a lethal weapon supports an inference of an intent to kill. *People v. Turner*, 62 Mich. App. 467, 470, 233 N.W.2d 617 (1975).

Applying the *Jackson* standard, the Michigan Court of Appeals in this case concluded that the prosecution presented sufficient evidence to support Petitioner's convictions. *See Phillips*, 2002 WL 1308786 at *5-6. This Court agrees and finds that the Michigan Court of Appeals' decision is neither contrary to nor an unreasonable application of *Jackson*. As noted by the Michigan Court of Appeals, the evidence demonstrated that when Antoine Harmon and Felicia Wilkins failed to take their argument elsewhere as instructed, Petitioner fired a warning shot into the porch. A few moments later, he pointed his gun at Harmon's head and fired it at close range, causing Harmon's death. Several witnesses identified Petitioner as the shooter. Given such evidence, a rational factfinder could reasonably conclude that Petitioner committed the crime and that he acted with sufficient premeditation and deliberation.

Petitioner's insufficient evidence claim challenges the credibility and weight to be accorded the evidence presented at trial. However, it is well-settled that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). It is the job of the jury, not a federal habeas court,

16

to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). Given the evidence presented at trial, this Court finds that the Michigan Court of Appeals' determination that a rational trier of fact could have found the elements of first-degree murder and felony firearm beyond a reasonable doubt was reasonable. Habeas relief is not warranted on this claim.

### V.     Conclusion

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a

17

constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *See Slack*, 529 U.S. at 484-85.

For the reasons stated *supra*, this Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to each of his habeas claims.  No certificate of appealability is warranted in this case nor should Petitioner be granted leave to proceed on appeal *in forma pauperis*.  *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and leave to proceed on appeal *in forma pauperis* is **DENIED**.


/s/  Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

DATED:  4/29/05